Patrick M. Flatley
United States Bankruptcy Judge

Dated: Thursday, September 27, 2012 4:50:14 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BENJAMIN F. WARNER | ) | Case No. 1:10-bk-888 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| MARTIN P. SHEEHAN, Chapter 7 trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 1:12-ap-35 |
| | ) | |
| KARL K. WARNER, ELIZABETH A. WARNER, KRISTIAN E. WARNER, SR., ANDREW M. WARNER, MONROE P. WARNER, AND GEORGE B. WARNER, SR., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### **MEMORANDUM OPINION**

Martin P. Sheehan, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Benjamin F. Warner (the "Debtor"), requests entry of summary judgment on his adversary complaint against George B. Warner, Sr., Karl K. Warner, Elizabeth A. Warner, Kristian E. Warner, Sr., Andrew M. Warner, and Monroe P. Warner ("Defendants"). The Trustee seeks a declaration that McCoy Farm, LLC, ("McCoy Farm") is dissolved pursuant to its operating agreement, and a writ of mandamus for the manager of McCoy Farm to liquidate the company or the appointment of a receiver to proceed with liquidation.

1

On June 1, 2012, the court conducted a status hearing on the Trustee's motion for summary judgment in Wheeling, West Virginia. After receiving post-hearing briefing the court took the matter under advisement. For the reasons stated herein, the court denies the Trustee's motion for summary judgment.

## I. BACKGROUND

In December 2002, McCoy Farm acquired its only asset: George Warner, Sr., conveyed to McCoy Farm all of his right, title and interest in real property consisting of approximately 141.37 surface acres and 157.81 acres of oil and gas located in Barbour County, West Virginia. The land contains a family lodge, farmhouse, small cottage, and a mobile home. According to McCoy Farm's First Amended and Restated Operating Agreement ("Operating Agreement"), dated November 15, 2003, George Warner, Sr., is the named manager,[1] and the company's ownership is divided up into twelve membership units. Accompanying the Operating Agreement is the Schedule of Members, Contributions and Interest, which indicates that the Debtor, Karl, Andrew, Monroe, Kristian, and George Warner, Jr., each hold two membership units. George Warner, Jr., died in 2004 and the remaining members gave their written consent for his surviving spouse, Elizabeth Warner, to inherit his two membership units. Thus, each Defendant holds two membership units — a one-sixth interest in McCoy Farm.

In 2006, the Debtor and some of his brothers needed capital funds to invest in business enterprises located in Morgantown, West Virginia. Because they did not have enough capital to secure bank financing, they approached Karl Warner to inquire about a loan. He agreed to lend them $500,000 of his life savings. By December 2008, Karl Warner became concerned about repayment and asked his brothers to transfer to him their membership units in McCoy Farm as security for the loan. The brothers orally agreed to transfer the units in December 2008 and again on March 25, 2009; the oral agreements were eventually put in writing on January 19, 2010.

About three months later, on April 22, 2010, the Debtor filed his Chapter 7 bankruptcy petition. Soon thereafter the Trustee brought an adversary proceeding in this court against Karl Warner to recover the transfer of the Debtor's membership units in McCoy Farm. This court

---

[1] The Defendants have informed the court that George Warner, Sr., is now deceased.

determined that the Operating Agreement expressly forbade the transfer of the Debtor's interest.[2] *Sheehan v. Warner (In re Warner)*, Case No. 10-ap-100, 2011 WL 3510736, at *4 (Bankr. N.D.W. Va. July 1, 2011). The Trustee then sought a declaration that the Debtor's interest in McCoy Farm was property of the bankruptcy estate. After this court held that all of the Debtor's interest, however classified, was property of his estate under 11 U.S.C. § 541(a), *Sheehan v. Warner (In re Warner)*, Case No. 10-100, slip. op. at 4 (Bankr. N.D.W. Va. Nov. 29, 2011), the Trustee contacted the Defendants and sought liquidation of McCoy Farm; the Defendants rejected the Trustee's request.

On December 2, 2011, the Trustee filed a complaint in the District Court for the Northern District of West Virginia, seeking, among other things, a declaration that the Operating Agreement requires the dissolution of McCoy Farm. The district court found that it had subject matter jurisdiction to hear the proceeding and then referred it to this court.[3] This court held a telephonic status conference on June 1, 2012 to take up the Defendants' second motion to dismiss and the Trustee's motion for summary judgment. At the hearing, the court expressed concern over whether the Trustee may force dissolution of McCoy Farm under the Operating

---

[2] Neither the oral nor written agreements were effective to transfer the Debtor's membership units to Karl Warner because the agreements did not comport with the strictures of the Operating Agreement: "[T]he Debtor's membership units were not first offered for sale to McCoy Farm; the Debtor's membership units were not offered for sale to all other members; and/or the prior written consent of all members to allow the transfer of the Debtor's ownership units was not obtained." *In re Warner*, 2011 WL 3510736, at *4. This court cabined its holding to the Debtor and did not make any findings as to whether the other members transferred their membership units to Karl Warner.

[3] The district court found that this proceeding "relates to" a title 11 case under 28 U.S.C. § 1334 because it impacts the rights and liabilities of the Debtor and its outcome "may have a substantial impact on the assets available for distribution to creditors of the bankruptcy estate." *Sheehan v. Warner (In re Warner)*, Case No. 1:11CV193, 2012 WL 1424401, at *2 (N.D.W. Va. April 23, 2012) (citation omitted). Because a denial of a summary judgment motion is not a final order, the court is not submitting proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1); *In re Trinsum Group, Inc.*, 467 B.R. 734, 739-41 (Bankr. S.D.N.Y. 2012) ("[O]nly entry of a final order or judgment requires the bankruptcy court to submit proposed findings of fact and conclusions of law to the district court."); *In re Lancelot Investors Fund, L.P.*, 467 B.R. 643, 646 n.1 (Bankr. N.D. Ill. 2012) ("The court notes that the denial of a summary judgment motion is not a final order.") (citing *Ortiz v. Jordan*, 131 S.Ct. 884 (2011)); *see In re Smith*, 735 F.2d 459, 461 (11th Cir. 1984) ("The denial of summary judgment is interlocutory in nature and is thus not appealable.") (citations omitted). To the extent a contrary view may be asserted and sustained, the court's opinion may be treated as proposed findings of fact and conclusions of law in accordance with § 157(c)(1).

Agreement.  The court gave the parties an opportunity to file post-hearing hearing briefing to address the court's concerns.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Showing an absence of any genuine dispute as to any material fact satisfies this burden.  *Id.* at 323.  Material facts are those necessary to establish the elements of the cause of action.  *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  "Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.  *Celotex Corp.*, 477 U.S. at 322-23.  The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Shaw,* 13 F.3d at 798.  However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial."  *Anderson*, 477 U.S. at 249-50.  Nor should the court make credibility determinations.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial.  *Celotex Corp.*, 477 U.S. at 317, 323-24.

## III. DISCUSSION

The Trustee argues that the Debtor's bankruptcy was an event of dissolution under the terms of the Operating Agreement and that either a writ of mandamus should be issued to the

manager of McCoy Farm to liquidate the company, or a receiver should be appointed to dissolve the company. The Trustee draws support from two provisions in the Operating Agreement: Section 10(a)(ii) provides that McCoy Farm "shall be dissolved upon the occurrence of any of the following events: . . . (ii) upon the death, retirement, withdrawal, expulsion, bankruptcy or dissolution of a Member . . . "; and § 10(c) which states that "the dissolution of the Company shall be effective on the date on which the event occurs giving rise to such dissolution . . . . [A] manager, or (in the absence of a manger) a liquidator . . . shall liquidate the assets of the Company, apply and distribute the proceeds thereof . . . ."

The Defendants contend that McCoy Farm has not dissolved because the remaining members met in December 2011 and agreed to continue the company in accordance with § 10(b) of the Operating Agreement. Section 10(b) states:

> In the event of dissolution of the Company pursuant to the events of dissolution described in Section 10a.(ii), . . . [McCoy Farm] shall not be discontinued, and . . . shall remain in existence . . . if the remaining Members unanimously agree to continue the Company under this Agreement within sixty (60) days of such dissolution.

The Defendants allegedly agreed to continue McCoy Farm sometime "between July 1-10, 2011" and memorialized this resolution ("Resolution") on December 17, 2011.[4] In this Resolution, all the members except the Debtor agree, among other things, that the Debtor is dissociated and "shall have no right to participate in the business of the company" and that McCoy Farm shall continue to operate and remain in existence.

The enforceability of the Defendants' Resolution is potentially dispositive because, if enforceable, McCoy Farm would not dissolve and the Trustee's rights would be relegated to those of a disassociated member. The Defendants' Resolution, however, suffers from two fatal infirmities which render it invalid insofar as it seeks to disassociate the Debtor and avoid dissolution of McCoy Farm.

First, the Defendants attempt to disassociate the Debtor violates the automatic stay. *See In the Matter of Daugherty Const., Inc.*, 188 B.R. 607, 615 (Bankr. D. Neb. 1995) (concluding

---

[4] Accompanying the Defendants' response to the Trustee's motion for summary judgment is a document titled "Resolution Of The Members Of McCoy Farms, LLC Evidencing And Memorializing Actions Taken By The Members Between July 1-10, 2011 In Consideration of the July 1, 2011 Opinion And Order Of The Bankruptcy Court Regarding The Membership Interest Of Benjamin F. Warner." (Doc. No. 15). The document was signed on December 17, 2011.

5

that LLC members voting post-petition to remove the debtor as manager and approving a new manager are actions that amount to "exercise of control over property of the estate and in violation of the automatic stay provisions" under 11 U.S.C. § 362(a)(3)); *In re McCabe*, 345 B.R. 1, 7 (Bankr. D. Mass. 2006) (holding that a non-debtor member amending a LLC agreement post-petition to reallocate the debtor's membership interest violates the automatic stay). Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3); *In re Stinson*, 221 B.R. 727, 730-31 (Bankr. E.D. Mich. 1998) (discussing that § 362(a)(3) is designed to prevent dismemberment of the bankruptcy estate and ensure the trustee has an opportunity to determine the rights and interest of the debtor in property). As the court will discuss more fully below, the right to participate in a LLC — a non-economic right — is property of the estate under 11 U.S.C. § 541(a). *E.g.*, *Klingerman v. Execu-Corp. LLC (In re Klingerman)*, 388 B.R. 677, 679 (Bankr. E.D.N.C. 2008) (holding that debtor's "rights and interest in the LLC, economic and non-economic, became property of the estate upon the filing of his petition"); *In re Ellis*, Case No. 10-16998-AJM-7A, 2011 WL 5147551, at *3 (Bankr. S.D. Ind. Oct. 27, 2011) (finding that the debtor retained both his economic and non-economic interest in the LLC when he filed his chapter 7 petition); *In re Garrison-Ashburn*, 253 B.R. 700, 708 (Bankr. E.D. Va. 2000) (same). Because non-economic rights are property of the estate and fit under the canopy of § 362(a)(3), the provision in the Defendants' Resolution that disassociates the Debtor is void. *See U.S. v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) ("Actions taken in violation of the automatic stay are void and without effect.") (citation omitted); *In re Stinson*, 221 B.R. at 730 ("[Intangible] rights are incapable of real possession unless they are reified. Yet, [363](a)(3) preserves and guards against interference with them by staying any act to exercise control over estate property.") (quoting 1 David G. Epstein et al., *Bankruptcy* § 3-14, at 163 (1992)).

Second, the Defendants attempt to continue McCoy Farm was untimely. Under § 10(a)(ii) and (b), McCoy Farm shall dissolve upon the filing of a bankruptcy petition by one of its members unless the remaining members unanimously agree to continue within sixty days from the date of petition. The Debtor filed bankruptcy on April 22, 2010, and therefore the Defendants had until June 21, 2010 to agree to continue McCoy Farm. Because the earliest act to continue the company was not until July 1, 2011, under the express terms of the Operating Agreement, McCoy Farm dissolved on April 22, 2010.

However, dissolving McCoy Farm because a member files bankruptcy raises a salient federal question: whether dissolving a LLC because a member files bankruptcy contravenes 11 U.S.C. § 541(c)(1).  To evaluate this issue the court must consider (I) the applicability of 11 U.S.C. § 365, and (II) the extent of the Trustee's interest in McCoy Farm, LLC.  For purposes of disposition of the Trustee's motion for summary judgment, the court will also analyze (III) the Trustee's ability to liquidate the Debtor's interest in McCoy Farm, LLC.

I.      **Applicability of § 365**

Neither the Defendants nor the Trustee mention § 365 or argue whether the Operating Agreement is an executory contract.  Nonetheless, the court must take up this inquiry as the determination is essential to an evaluation of the Trustee's rights and powers in McCoy Farm. *See Movitz v. Fiesta Inv., LLC (In re Ehmann)*, 319 B.R. 200, 203 (Bankr. D. Ariz. 2005) ("If a partnership relation entails both executory contract rights and nonexecutory property rights, then it would seem to necessitate a threshold determination of which kind of rights are at issue for the particular kind of relief a Trustee seeks with respect to a . . . LLC.").  Before determining whether the Operating Agreement is an executory contract, it is necessary to discuss the import of § 365 on the Trustee's rights and its interplay with § 541(c).

Some courts reason that if an operating agreement "is an executory contract . . . § 365 governs the trustee's rights rather than § 541(c)(1)." *Fursman v. Ulrich (In re First Protection, Inc.)*, 440 B.R. 821, 830-31 (B.A.P. 9th Cir. 2010).  For example, in *In re First Protection,* the court stated that if the operating agreement is an executory contract then "the restrictive provisions under the Arizona LLC Act or the operating agreement that affect the transfer of Debtor's [member of LLC] rights and interest in Redux [LLC] may be enforced through operation of § 365 in some instances." *Id.*  Similarly, in *In re Ehmann*, the court explained that if the operating agreement was an executory contract, § 365(e)(2), if applicable, would permit "the enforcement of state and contract law restrictions on the Trustee's rights and powers," but if it was not an executory contract, § 541(c)(1) would render "such restrictions or conditions unenforceable against the Trustee." 319 B.R. at 202.

Other courts decline to examine whether a LLC operating agreement is an executory contract if the trustee or debtor fails to timely assume.  *See* § 365(d)(1) ("In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract . . . within 60 days after the order for relief . . . then such contract . . . is deemed rejected."); § 365(d)(2) ("[T]he

7

trustee may assume or reject an executory contract . . . at any time before the confirmation of a plan . . . ."). In *In re Dixie Mgmt. & Inv., Ltd. Partners*, the court forewent an analysis of whether the operating agreement was an executory contract because "even if the Court found the OA [operating agreement] to be an executory contract, Dixie did not assume the contract." Case No. 5:08-bk-73874, 2011 WL 1753971, at *1 (Bankr. W.D. Ark. May 9, 2011) (citing § 362(d)(2)). Likewise, the court in *In re Jundanian*, after thoroughly describing the landscape of executory contracts and operating agreements, found that it "need not resolve whether the Operating Agreement was an executory contract" because the "Plan provides that all executory contracts are deemed rejected on its effective date" and the defendant did not assume by the plan's effective date. Case No. 10-21513-TJC, 2012 WL 1098544, at *6-7 (Bankr. D. Md. March 30, 2012).

This court largely agrees with the observations made by *In re First Protection* and *In re Ehmann* regarding the implications of § 365.[5] If an operating agreement is an executory contract, the panoply of rules in § 365 apply to affect or alter a trustee's rights and powers. Two notable sections may apply if an operating agreement is an executory contract: §§ 365(c) and 365(e). Section 365(c)(1)[6] allows non-debtor parties to prevent the trustee from assuming or

---

[5] The court is presently reluctant to embrace the concept that if § 365 is inapplicable then § 541(c)(1) "acts to render . . . [state and contract] restrictions and conditions unenforceable as against the Trustee." *In re Ehmann*, 319 B.R. at 202. Section 541(c)(1) is a provision of general application and operates to invalidate restrictions on the transfer of property of to the estate. *In re Polycorp Associates*, 47 B.R. 671, 672 (Bankr. N.D. Cal. 1985); H.R. Rep. No. 595, 95th Cong. 1st Sess. 368-69 (1977). As the leading bankruptcy treatise explains, "'personal' property interests or 'personal' rights that may not be transferred under federal or state law will nevertheless become property of the estate" under § 541(c)(1) and "[w]hether the property may be sold, used or leased or whether an executory contract or unexpired lease can be assumed or rejected is determined by other sections of the Code." 5 *Collier on Bankruptcy* ¶ 541.26 (16th ed. rev. 2012). Section 541(c)(1) does not define the bundle of rights that go with property or invalidate provisions that provide the parameters on which a trustee can sell a debtor's interest in property. *See In re Jundanian*, 2012 WL 1098544, at *6 ("Congress enacted § 541(c) to eliminate barriers to the transfer of property into the estate, and not to void restrictions on the transfer of property from the trustee to third parties."); Thomas E. Geu & Thomas E. Rutledge, *Guess Who's Coming to Dinner?: The Bankruptcy Trustee's Ability To Become A Member Of An LLC And The Ehmann Decision*, 7 No. 2 Busent 32, 2005 WL 984382 (2005) (arguing that the it is a non-sequitur for the court in *In re Ehmann* to suggest that § 541(c)(1) acts to render conditions and restrictions at state law unenforceable because "rather than reading it [§ 541(c)(1)] simply to mandate the transfer of the underlying property, however defined, to the Trustee, misapplied it to define the property interest received by the Trustee").

[6] Section 365(c)(1) provides:

8

assigning the rights of the debtor as long as the contract is an agreement where substitute performance is not permitted. Section 365(e)(1)[7] invalidates *ipso facto* provisions that prevent the bankruptcy estate from receiving the benefit of an executory contract. *See Endeka Enterprises, LLC v. Meiburger (In re Tsiaoushis)*, Case. No. 1:07cv436, 2007 WL 2156162, at *2 (E.D. Va. July 19, 2007) (noting that if the LLC operating agreement constitutes an executory contract, then § 365(e) would invalidate the provisions in the agreement which purport to dissolve the LLC). But this provision is not always applicable; section 365(e)(2) provides that § 365(e)(1) does not apply if "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance or rendering performance to the trustee or to an assignee of such contract . . . ." § 365(e)(2); *see also* § 365(c)(1). Section 365(e)(2) allows non-debtor parties to enforce transfer restrictions contained in an executory contract against a trustee and to excuse them from accepting or rendering performance to the trustee.[8]

An examination of whether an operating agreement is an executory contract is necessary even when the trustee fails to timely assume. A rejected operating agreement that is determined to be executory brings with it significant implications. When a contract is deemed rejected it constitutes a breach of contract, relieving a debtor from any future obligations and permitting the other party to the contract to file a claim. *See In re First Protection, Inc.*, 440 B.R. at 831.

---

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if — (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (2) such party does not consent to such assumption or assignment . . . .

[7] Section 365(e)(1) provides:
Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract . . . of the debtor may not be terminated or modified, and any right or obligation under such contract . . . may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . (B) the commencement of a case under this title.

[8] An overlap, arguably a conflict, exists between §§ 365 and 541(c)(1). *See In re Garbinski*, 465 B.R. 423, 426 (Bankr. W.D. Pa. 2012) ("Section 365 is thus in apparent conflict, or at least in tension, with 11 U.S.C. § 541(c)(1) . . . ."). Section 541(c)(1) voids *ipso facto* provisions while § 365(e)(2) would permit the non-debtor entity to enforce an *ipso facto* clause within the contract. The court leaves this conflict for another day as the Operating Agreement is not an executory contract.

9

Moreover, a trustee cannot enforce rights established by the agreement for those rights are reserved to acting members. *See In re Newlin*, 370 B.R. 870, 876 (Bankr. M.D. Ga. 2007) ("The Court cannot permit the enforcement of a partner's right [mandatory purchase right] that arises solely from a Partnership Agreement that has been deemed rejected by the Trustee."). Whether an operating agreement is deemed rejected is only relevant if the contract is executory; if the operating agreement is not executory, then the limitations under § 365, in particular § 365(d)(1) and (d)(2), are inapplicable. *See In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. 632, 636-37 (Bankr. N.D. Ill. 2006) (declining to determine whether the a right of first refusal in the LLC operating agreement is unenforceable under § 365(e) because "[t]he provisions of 365 are only applicable to executory contracts"). Therefore, an analysis of whether an operating agreement is an executory contract within the meaning of § 365 remains necessary despite the failure of a trustee to assume the contract because a trustee could potentially enforce provisions within an operating agreement when it is not executory.

Although § 365 does not define the term "executory contract," the United States Court of Appeals for the Fourth Circuit defines a contract as executory if the "obligations of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984) (quoting Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L. Rev. 439, 460 (1973)). There is a lack of consensus among the courts regarding the executory nature of operating agreements of limited liability companies[9] because "[t]here are no *per se* rules regarding the classification of limited liability company operating agreements. Instead, courts individually assess each operating agreement to determine whether its particular provisions draw it into the purview of § 365." *Bensusan v. Prebul (In re Prebul)*, Case No. 09-14010, 2011 WL 2947045, at *7 (Bankr. E.D. Tenn. July 19, 2011); *In re Tsiaoushis*, 383 B.R. at 620 ("There is no *per se* rule. Each operating agreement is separately analyzed."). Factors relevant in

---

[9] *Compare Allentown Ambassadors, Inc. v. Northeast Am. Baseball, LLC (In re Allentown Ambassadors, Inc.)*, 361 B.R. 422, 444 (E.D. Pa. 2007) (finding operating agreement of LLC was executory); *In re DeLuca*, 194 B.R. 65, 77 (Bankr. E.D. Va. 1996) (same); *Matter of Daugherty Constr., Inc.*, 188 B.R. at 612 (same), *with Meiburger v. Endeka Enters., L.L.C., (In re Tsiaoushis)*, 383 B.R. at 618-19 (finding operating agreement of LLC was not an executory contract); *In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. at 636-37 (same); *In re Ehmann*, 319 B.R. at 205-06 (same).

10

evaluating a LLC operating agreement include whether the operating agreement imposes remote or hypothetical duties, requires ongoing capital contributions, and the level of managerial responsibility imposed on the debtor. *See, e.g.*, *In re Tsiaoushis*, 383 B.R. at 619 (finding that "failure to perform a remote and speculative duty" does not satisfy the Countryman definition); *In re Garrison-Ashburn, L.C.*, 253 B.R. at 708-09 (holding that LLC operating agreement was not executory, in part, because it only provided for the structure for management of the company and imposed no additional duties or responsibilities on the members); *In re DeLuca*, 194 B.R. 65, 77 (Bankr. E.D. Va. 1996) (concluding LLC operating agreement was an executory contract because the "object of the agreement — the development of the Parc City Center project — has not yet been accomplished and the parties have on-going duties and responsibilities" to finish the project). For the court's examination, the four corners of the agreement are examined along with applicable nonbankruptcy law. *In re Allentown Ambassadors, Inc.*, 361 B.R. at 444.

In this case, the Operating Agreement reveals that there are no material unperformed and continuing obligations owed by the Debtor: the Debtor is not a manager of McCoy Farm;[10] he has never contributed capital to the LLC;[11] he has no obligation to provide any personal expertise or service to the company; and he may withdraw at any time so long as notice is given.[12] The "buy back" provision is the only arguable affirmative duty the court can discern upon review of the Operating Agreement. Under § 9(b), a member cannot sell his or her interest without first offering it to the company and providing a 60 day window to accept. This section restricts the Debtor's ability to sell his interest without first offering it to McCoy Farm; however, it does not create a performance obligation, it only constrains how members sell their interest. *See Samson v. Prokopf (In re Smith)*, 185 B.R. 285, 294 (Bankr. S.D. Ill. 1995) (finding "buy back provision"

---

[10] Section 7(a) "delegate[s] full and exclusive responsibility and authority for management of the business and affairs" of McCoy Farm to the manager. Section 7(d) provides that "George B. Warner, Sr. is hereby appointed the Manager of the Company . . . and shall serve until his or her successor has been appointed and has undertaken the duties of such Manager."

[11] Section 3(a) provides that in exchange for the Debtor's interest in McCoy Farm, he "shall contribute, to the extent accepted by the Company, cash, services rendered . . . in the amounts set forth opposite his . . . name on the attached Schedule of Members, Contributions, and Interest." According to the Schedule of Members, Contributions and Interest, the Debtor has contributed nothing. In fact, George B. Warner, Sr., is the only contributing member.

[12] Section 9(f) provides that a member may withdraw from McCoy Farm "upon not less than six (6) months prior written notice to each of the Members."

in limited partnership did not create a "performance obligation" on behalf of partner, and even if it did, it was not a "material" obligation).

Furthermore, the purpose for which the company was formed suggests that no material obligation is owed by the Debtor to McCoy Farm. Karl Warner, a member of McCoy Farm, testified that the purpose of the company is to hold family property; specifically, the land conveyed by George Warner, Sr. It seems unlikely that a member of a LLC holding company which already has its sole asset would have any material obligations; such unlikelihood is further corroborated by looking to § 3(a), which provides that "[a]ll Members are obligated to the Company to contribute the cash or property . . . as set forth in said attached schedule, [Schedule of Members, Contributions and Interests] as such schedule attached to this Agreement constitutes an enforceable written promise by all Members." Notably, there is no obligation to provide additional capital contributions other than by virtue of § 3(a). Other than George B. Warner, Sr., the Schedule of Members, Contributions and Interests does not note or otherwise indicate that any member is to contribute cash or property. The court finds that the Operating Agreement does not constitute an executory contract because there are no material obligations unperformed by the Debtor.

Because § 365 does not apply in this case, nothing in § 365 alters the court's conclusion that the language of the Operating Agreement requires dissolution of McCoy Farm. The court must now examine what property rights of the Debtor entered his estate under § 541(a), and whether § 541(c) acts to bring those rights into his bankruptcy estate notwithstanding the Operating Agreement dissolving McCoy Farm.

## II. The Extent Of The Trustee's Interest In McCoy Farm, LLC

### A. Section 541(a)

When the Debtor filed his Chapter 7 petition a bankruptcy estate was created by operation of law. § 541(a). Property of his estate includes, *inter alia*, "all legal or equitable interests . . . in property as of the commencement of the case." *Id.*; *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("[E]very conceivable [property] interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."). While § 541(a) provides whether an interest of the debtor is property of the estate, a debtor's property rights are defined at state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *McCarthy, Johnson & Miller v. N. Bay*

12

*Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000) ("Although the question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interest in property as of the commencement of the case."). As such, the court must look to the Uniform Limited Liability Company Act ("ULLCA"), which West Virginia has adopted, and the Operating Agreement to determine the extent of the Debtor's interest in McCoy Farm.

The ULLCA governs the law surrounding the formation, operation, and termination of limited liability companies in West Virginia. W. Va. Code §§ 31B-1-101 *et seq*. In West Virginia, a LLC is a legal entity distinct from its members. W. Va. Code § 31B-2-201. A member of a LLC is "not a coowner of, and has no transferable interest in, property of a limited liability company." W. Va. Code § 31B-5-501(a). Consequently, members of a LLC do not have an ownership interest in the specific property of the company. But members do have a personal property interest in the distributions of a LLC. *Mott v. Kirby*, 696 S.E.2d 304, 307 (2010) (explaining that a member has a distributional interest in the LLC but not ownership interest in its specific property). A distribution means a "transfer of money, property or other benefit from a limited liability company to a member in the member's capacity as a member or to a transferee of the member's distributional interest." W. Va. Code § 31B-1-101(7); W. Va. Code § 31B-1-101(8) ("'Distributional interest' means all of a member's interest in distributions by the limited liability company."). A member's distributional interest — his or her economic rights in the LLC — is property of the bankruptcy estate, *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 707 (Bankr. E.D. Va. 2000), but not the specific property owned by the LLC, *In re Brittain*, 435 B.R. 318, 322 (Bankr. D.S.C. 2010). However, the rights of a member may be broader than merely sharing in distributions from a LLC. Members may have non-economic rights, such as management authority. *See* W. Va. Code § 31B–3-301.

Here, the Operating Agreement delineates each member's authority to participate in the affairs of McCoy Farm.[13] Section 7(a) states that the members delegate "full and exclusive" authority for management of McCoy Farm to the manager. Although this provision provides that all management rights are in the hands of a manager, other sections authorize members to

---

[13] The Operating Agreement also details the economic interests of the members. Section 5(a) provides that the profits and losses "shall be allocated ratably among the Members in accordance with their proportionate Units in the Company."

13

participate in the affairs of the company. For instance, members vote to fill a vacancy in the position of manager, remove a manager, to approve the sale a member's interest, to approve the substitution of a new member, and to continue the company if there is an event of dissolution. The court finds that these and similar voting rights — non-economic contractual rights — are property of the Debtor's estate under § 541(a)(1). *E.g.*, *In re First Protection, Inc.*, 440 B.R. at 830 ("We conclude that all of the Debtors' [members] contractual rights and interest in Redux [LLC] became property of the estate under § 541(a) by operation of law when they filed their petition."); *In re Jundanian*, 2012 WL 1098544, at *5-6 (concluding that the member's voting and management rights become property of the estate upon the filing of his bankruptcy petition); *see Gould v. Antonelli (In re Antonelli)*, 4 F.3d 984 (4th Cir. 1993) (per curiam) ("When bankruptcy proceedings commenced, Antonelli's general partnership interests became the property of the Debtor's bankruptcy estate. Both the economic interest in the partnerships and the right to participation in the management of the partnerships' affairs vested in the estate."); *see also In re Ellis*, 2011 WL 5147551, at *3; *In re Klingerman*, 388 B.R. at 678.

The ULLCA and the Operating Agreement differ, however, in how they treat the Debtor filing bankruptcy. Pursuant to the Operating Agreement, the Debtor filing bankruptcy results in dissolution of McCoy Farm, whereas under the ULLCA, a member of a LLC who files bankruptcy is disassociated and loses the "right to participate in the management and conduct of the company's business terminates . . . and the member ceases to be a member and is treated the same as a transferee of a member." W. Va. Code § 31B–6–603(b)(1); W. Va. Code § 31B–6–601(7)(i) ("A member is dissociated from a limited liability company upon the occurrence of . . . (7) The member's (i) becoming a debtor in bankruptcy . . . ."). With the exception of certain non-waivable provisions, the ULLCA only governs relations among the members, manager, and the company when "the operating agreement does not otherwise provide." W. Va. Code § 31B–1–103(a); W. Va. Code § 31B–1–103(a) ("[A]ll members of a limited liability company may enter into an operating agreement, which need not be in writing, to regulate the affairs of the company . . . and to govern relations among the members, managers and company."). The Operating Agreement therefore governs because it provides for the consequences of a member filing bankruptcy.

Specifically, the Operating Agreement requires that McCoy Farm dissolve because the Debtor filed for bankruptcy. The court must next examine whether dissolution of McCoy Farm

14

acts to modify, terminate or forfeit the Debtor's economic or non-economic interest in the company. § 541(c)(1).

### B. Section 541(c)(1)

At the status conference on June 1, 2012, the court requested the parties to address the implications of § 541(c). The Trustee's post-hearing brief poses the issue before the court in two ways: whether the bankruptcy estate can choose to be bound by the provisions of the Operating Agreement, resulting in dissolution of McCoy Farm and payment to the Debtor that is commensurate with his interest, or whether § 541(c) always renders dissolution provisions inoperable. The Trustee urges the court to adopt the first approach, and find that he has the same rights as the Debtor in McCoy Farm as of commencement of the case and the expanded rights the bankruptcy estate acquires by virtue of the transfer; namely, the right to opt for dissolution under § 10(a)(ii) of the Operating Agreement. He argues that the public policy underpinnings of § 541(c) — preventing harm to creditors and preserving debtors ability to reorganize — lose force in a Chapter 7 context because automatically preempting dissolution provisions would destroy value for creditors of the estate. The Trustee eschews the second approach, contending that disabling dissolution provisions would make liquidating a debtor's interest exceedingly difficult because of boiler plate restrictions that generally exist in operating agreements, such as rights of first refusal, outright prohibitions on transfers, and one-sided buyout provisions.

In response, the Defendants assert that § 541(c) preempts § 10(a)(ii) of the Operating Agreement because dissolving a LLC based solely on a member filing bankruptcy would defeat the purpose of § 541(c) and is inconsistent with the Bankruptcy Code. The Defendants admit that the Trustee has all the rights and powers possessed by the Debtor at the time he filed his petition, but argue that those rights do not authorize the Trustee to dissolve McCoy Farm.[14]

The Bankruptcy Code disapproves of statutory and contractual provisions which are triggered by the commencement of a bankruptcy case. *See In re W.R. Grace & Co.*, Case No. 11-199, 2012 WL 2130981, at *70 (D. Del. June 11, 2012) ("[I]t is well-established that *ipso facto* clauses are unenforceable as a matter of law under the Bankruptcy Code. This is because the whole purpose of filing for bankruptcy is to provide the debtor with a "fresh start," and

---

[14] The court recognizes the Defendants took disparate positions: They argue that the Debtor has been disassociated by the Resolution and is no longer a member while also stating that "Benjamin Warner's interest [in McCoy Farm] remains intact" and that the Trustee "steps into the shoes" of the Debtor as of commencement of the bankruptcy case.

15

enforcement of *ipso facto* clauses would punish debtors by negating this central purpose."); *In re Railway Reorganization Estate, Inc.*, 133 B.R. 578, 583 (Bankr. D. Del. 1991) ("Today courts continue to read the Code's *ipso facto* section broadly to effectuate code policy and in recognition that bankruptcy matters are also inherently proceedings in equity.") (internal quotations and citations omitted). In particular, § 541(c) was promulgated to "invalidate restrictions on the transfer of property of the debtor, in order that all the interests of the debtor in property will become property of the estate." H.R. Rep. No. 595, 95th Cong. 1st Sess. 368-69 (1977). Section 541(c)(1)(A) renders ineffective contractual or statutory provisions that purport to restrict or condition the transfer of a debtor's interest to the estate. § 541(c)(1)(A); *see In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) ("Section 541(c)(1)(A) . . . avoids only those restrictions which prevent transfer of the debtor's property to the estate."). And § 541(c)(1)(B) provides that "an interest of the debtor in property becomes property of the estate under" § 541(a)(1), (a)(2), or (a)(5) despite contrary provisions in any agreement or nonbankruptcy law "that is conditioned . . . on the commencement of a case under this title . . . and that effects . . . a *forfeiture*, *modification*, or *termination* of a debtor's interest in property." § 541(c)(1)(B) (emphasis added).

The Debtor's economic and non-economic rights fit within the ambit of § 541(c)(1) because these interests are property of his estate under § 541(a)(1). By filing bankruptcy, the Debtor triggered McCoy Farm's dissolution and liquidation under § 10(a)(ii) of the Operating Agreement. Cessation of the Debtor's ongoing right to participate in the affairs of the company and receive distributions effects a "modification, or termination" of his interest in property. § 541(c)(1)(B). Absent application of § 541(c)(1), the Debtor's bankruptcy filing would modify the nature of his interest in McCoy Farm: Prior to his bankruptcy he held the full array of economic and non-economic rights provided under the Operating Agreement in a viable, operating company; while after his bankruptcy, he held an economic interest in a defunct LLC[15] and constrained non-economic rights.[16] Thus, the court holds that § 541(c)(1) invalidates §

---

[15] Section 10(c) of the Operating Agreement provides that dissolution of McCoy Farm shall be effective on the date which an event of dissolution occurs. Upon dissolution, the manager of McCoy Farm (or a liquidator in the absence of a manger) shall liquidate the assets of the company and distribute the proceeds.

[16] The extent of a member's ability to make decisions on behalf of a LLC changes upon it dissolving and entering a "wind up" phase. *See generally* W. Va. Code § 31B-8-804(b) ("A member . . . who . . . subjects a limited liability company to liability by an act that is not

16

10(a)(ii) of the Operating Agreement and renders it unenforceable. *In re Prebul*, 2011 WL 2947045, at *11 (holding that clauses providing for dissolution of a limited liability company upon a member filing bankruptcy are invalid under § 541(c)(1)); *In re Daugherty Constr.*, 199 B.R. at 611-12 ("Under section 541(c)(1), provisions of [state] law and provisions of the LLC Articles of Agreements which purport to dissolve the LLC's and terminate the debtor's interest therein upon the commencement of a bankruptcy case are not enforceable in a bankruptcy case . . . ."); s*ee In re Jundanian*, 2012 WL 1098544, at *5 ("The *ipso facto* provision contained in § 4A606(3)(ii) of the Act, providing that a person ceases to be a member of a limited liability company when they file a voluntary petition in bankruptcy, is invalidated by § 541(c)(1) of the Code."); *In re Dixie Mgmt. & Inv., Ltd. Partners*, 2011 WL 1753971, at *2-3 (holding that language in LLC operating agreement that disassociated debtor was in contravention of § 541(c)(1) and therefore ineffective). Accordingly, § 541(c)(1) acts to vitiate the application of the Operating Agreement calling for dissolution upon the Debtor's bankruptcy filing.

### III. The Trustee's Ability To Liquidate the Debtor's Interest in McCoy Farm, LLC

The Trustee contends that automatic preemption of dissolution provisions destroys value for creditors of the estate which is "at the heart of the very notion of bankruptcy law." He emphasizes that preempting all dissolution provisions leaves trustees with few avenues by which to realize value for the estate. The Trustee urges that the appropriate solution is to recognize that he has the same rights as the Debtor in McCoy Farm, as well as "expanded rights" the bankruptcy estate acquired by virtue of the transfer. Under the Trustee's theory, he would have the discretion to exercise § 10(a)(ii).

The court rejects the Trustee's argument because it expands his rights beyond those held by the Debtor. The Trustee steps into the Debtor's shoes and succeeds to all his rights under the Operating Agreement. *E.g.*, *In re First Protection, Inc.*, 440 B.R. at 830 (finding that "the trustee was not a mere assignee, but stepped into the Debtors' shoes"); *In re Garbinski*, 465 B.R. at 427 ("Section 541(c)(1) thus effectively places the Trustee in the shoes of the Debtor . . . ."). The Trustee rights and powers are limited to those held by the Debtor as of commencement of

---

appropriate for winding up the company's business is liable to the company for any damage caused to the company arising from the liability."). Further, the winding up of a LLC is not of infinite duration, and subjects members to deadlines to ensure the orderly liquidation of the company. *See generally* W. Va. Code § 31B-8-803(c) ("A person winding up a limited liability company's business may preserve the company's business or property as a going concern for a reasonable time . . . .").

the case. *In re Ehmann*, 319 B.R. at 206. Expanding the Trustee's rights to allow him to choose which provisions of the Operating Agreement control rings a dissonant chord with § 541(c)(1). Section 541(c)(1) does not operate to define the bundle of rights that go with property. *See supra* text accompanying note 5. The Trustee cannot redefine the nature and extent of the Debtor's property interest in McCoy Farm by way of § 541(c)(1) for that interest is defined by state law. *See In re South Side House, LLC*, 474 B.R. 391, 402 (Bankr. E.D.N.Y. 2012) ("[T]he estate succeeds to no more interest than the debtor had, and the estate takes its interest subject to the conditions under which the debtor held the interest.") (internal quotations and citation omitted).

Additionally, the Trustee's policy arguments regarding the purpose of bankruptcy law and the practical problems for trustees in realizing value for the estate fail to contemplate countervailing considerations. Admittedly, upsetting non-debtor member expectations under contract law is not novel in the bankruptcy arena. The suspension and modification of non-debtor parties "is the principal legal mechanism by which orderly liquidation and successful reorganization in bankruptcy are accomplished." Sally Neely, *Partnerships and Partners and Limited Liability Companies and Members in Bankruptcy: Proposals for Reform*, 71 Am. Bankr. L.J. 271, 321 (1997) (arguing that while "bankruptcy policy leads to the adjustment of previously existing, agreed contractual rights for the benefit of the estate, limits should be imposed to protect the property rights . . . of the entity imposed upon"). However, elevating trustees to "super member" status alters the fundamental makeup of a LLC member relationship. A trustee may have incentives that are incongruent with the non-debtor members; for instance, a trustee may want to liquidate the LLC property to pay creditors even in the face of a viable, profitable LLC. The relationship of a trustee to non-debtor members may be tenuous given that they are forced to deal with an individual with whom they did not choose to be associated. *See Breeden v. Catron (In re Catron)*, 158 B.R. 624, 627 (Bankr. E.D. Va. 1992) (observing that "fundamentally a partnership is based upon the personal trust and confidence of the partners"). Indeed, supplanting a debtor already grinds against the notion of *delectus personae*. *Black's Law Dictionary* 459 (8th ed. 2004) (defining *delectus personae* as the "rule that when personal relations are important, a person cannot be compelled to associate with another person"). The court declines to deviate from the majority position which places trustees in the same pair of shoes as the debtor.

The court acknowledges that a trustee holding a debtor's interest in a LLC is in a knotty position to realize value for the estate. *See In re Garbinski*, 465 B.R. at 425 (recognizing that a trustee holding a debtor's interest in a LLC "is in a somewhat difficult position" to generate funds for the estate). A Chapter 7 trustee is obligated to liquidate estate assets as expeditiously as possible. 11 U.S.C. § 704(a)(1) (mandating the trustee "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of the parties in interest . . . ."); *Matter of Richman*, 104 F.3d 654, 657 (4th Cir. 1997) ("Courts have consistently noted a public policy interest . . . [in] the swift and efficient administration of the bankrupt's estate."). A bankruptcy estate is both temporary and "for a narrowly prescribed purpose: the extraction of value from those assets and distribution of that value to the holders of claims . . . ." *In re Lahood*, Case No. 07-81727, 2009 WL 803558, at *10 n.16 (Bankr. C.D. Ill. March 19, 2009).

The court's holding does not strip the Trustee of his ability to expeditiously liquidate assets of the estate; for instance, he might be able to redeem the Debtor's interest or appoint a receiver to operate the company. *In re Ehmann*, 319 B.R. at 206. Because the Trustee is considered a member of McCoy Farm, he may also exercise the right to seek a judicial decree of dissolution under the Operating Agreement and state law. *See, e.g.*, *In re Baldwin*, Case No. EO-05-114, 2006 WL 2034217, at *2 (B.A.P. 10th Cir. 2006) (affirming the bankruptcy court's determination that the trustee stepped into shoes of the debtor and that he "may assert whatever rights the debtor has as a partner under the partnership agreement and state law, including the right to seek dissolution"); *In re Garbinski*, 465 B.R. at 427 (finding that trustee stepped into shoes of Debtor, thereby permitting "her to exercise rights as a partner/member seeking to obtain judicial dissolution and winding up of the entities by invoking state law remedies involving dissolution or liquidation of LLC or limited partnership entities"); *In re Smith*, 185 B.R. at 292 (same). Section 10(a)(i) provides that McCoy Farm shall be dissolved upon the "entry of a decree of judicial dissolution." Under West Virginia law, a limited liability company is dissolved

> [o]n application by a member . . . upon entry of a judicial decree that: (i) The economic purpose of the company is likely to be unreasonably frustrated; (ii) Another member has engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the company's business with that member; (iii) It is not otherwise reasonably practicable to carry on the company's

19

business in conformity with the articles of organization and the operating agreement . . . .

W. Va. Code § 31B-8-801(b)(5).

Whether the Trustee can succeed in one or more of the alternatives available to him remains to be seen. The point is that, although he is not entitled to a decree that McCoy Farm can be dissolved on the basis articulated in his motion for summary judgment, he is not necessarily left without other avenues for realizing value for the Debtor's estate. In that regard and consistent with the district court's order of reference, the court by separate order, will set a status conference to address further proceedings in this case, including any action upon the Trustee's Verified Complaint and Motion for Preliminary Injunction.[17]

### IV. CONCLUSION

For the above-stated reasons, the court denies the Trustee's motion for summary judgment without prejudice. A separate order will be entered contemporaneously with this memorandum opinion pursuant to Fed. R. Bankr. P. 9021.

---

[17] As noted, the court denies the Trustee's motion for summary judgment without prejudice. The court encourages the parties to explore all available options for an amicable resolution of the Trustee's claims; the court stands ready to facilitate mediation among the parties if requested. Although the court's guidance is hortatory only, it seems necessary as "[j]udicial intervention in the affairs of the corporation . . . should be a last resort." *Klingerman v. Execucorp LLC (In re Klingerman)*, Case No. 07-02455-5-ATS, 2009 WL 2423992, at *5 (Bankr. E.D.N.C. Aug. 4, 2009) (finding dissolution of the LLC was necessary given, in part, because of the failings of the corporate documents and uncertainty of the corporate members' rights which made the sale to a third party highly unlikely); see *Klingerman v. Execucorp LLC (In re Klingerman)*, Case No. 07-02455-5-ATS, 2008 WL 3287199, at *4-5 (Bankr. E.D.N.C. Aug. 6, 2008) (giving the debtor-member and non-debtor member of a LLC 30 days to reach a resolution and forewarning them after such time the court would likely exercise its discretion to dissolve the LLC).